UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TIMBERLY E. HUGHES,<br>Defendant. | Case No. 18-cv-05931-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT; DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 25, 34, 42 |

On December 6, 2019, Plaintiff the United States of America ("Plaintiff" or "United States") filed a motion for default judgment. Dkt. No. 25. On February 7, 2020, the Court held a hearing on the United States' motion for default judgment. Dkt. No. 33. Subsequently, Defendant Timberly E. Hughes ("Defendant") filed a request for leave to answer out of time, which the Court construed as a motion to set aside entry of default. Dkt. Nos. 34, 35. In addition, Defendant filed a motion to strike a portion of the United States' opposition. Dkt. No. 42. The Court has determined that the motion to set aside entry of default and the motion to strike are appropriate for a decision without a hearing. The hearing scheduled for Friday, April 3, 2020 is vacated. For the reasons set forth below, the Court **GRANTS** Defendant's motion for to set aside entry of default, **DENIES** Plaintiff's motion for default judgment, and **DENIES** Defendant's motion to strike.

## I. FACTUAL BACKGROUND

The United States brought this action to collect from Defendant outstanding civil penalty assessments (31 U.S.C. § 5321(a)(5)), commonly known as FBAR penalties, which were assessed against Defendant, for her alleged failure to timely report her financial interest in, and/or her signatory authority over, foreign bank accounts for the 2010, 2011, 2012, and 2013 calendar years, as required by 31 U.S.C. § 5314 and its implementing regulations, as well as all associated

penalties and interest. The total balance allegedly due to the United States is $721,344.14 as of August 22, 2017. Compl. ¶ 1. Defendant Timberly E. Hughes is a resident of San Francisco, California, and resided in San Francisco at the time of the events that gave rise to the civil penalties at issue in this action. Id. ¶ 3. Defendant is a U.S. citizen. Id.

The United States alleges Defendant has a business degree with a focus in accounting. Id. ¶ 11. Defendant worked as an accounts manager until approximately 1990, when she started her own bookkeeping business. Id. Since at least 2010, the United States alleges Defendant has performed bookkeeping services for a family trust that administers approximately $1 billion in assets. Id. ¶ 12. The United States alleges Defendant has also provided bookkeeping services for other clients which has included basis tracking, and tax return preparation services. Id. ¶ 13. For the calendar years 2010, 2011, 2012 and 2013, Defendant prepared approximately ten federal income tax returns (Forms 1040) for her clients each year and received compensation for her tax return preparation. Id.

The United States alleges Defendant is the sole owner of two businesses, Takamatua Valley Vineyards Limited ("TVV"), a vineyard, and Cuba Uncorked Limited ("CU"), a wine bar, which are both located in New Zealand. Id. ¶ 8. The United States alleges that Defendant had signatory authority and a financial interest over the following TVV and CU financial accounts held at ANZ Bank of New Zealand:

| Year | Account Name | Account Numbers |
|---|---|---|
| 2010 | Takamatua Valley Vineyards (TVV) | -1000, -1004, -0600, -0625 |
| 2011 | Takamatua Valley Vineyards (TVV) | -1005, -1000, -1004, -1006, -0600, -0625 |
| 2012 | Takamatua Valley Vineyards (TVV) | -1005, -1000, -1004, -1006, -0600, -0625 |
| 2013 | Takamatua Valley Vineyards (TVV) | -1005, -1000, -1004, -1006, -0600, -0625 |
|  | Cuba Uncorked (CU) | -4400 |

Id. ¶¶ 9, 25. The United States alleges that these accounts were bank accounts in a foreign county. Id. ¶ 26. The United States alleges that during the 2010, 2011, 2012, and 2013 calendar years, the aggregate value of the financial accounts identified above exceeded $10,000 in U.S. currency and Defendant was required to timely file Form TD F 90-22.1, "Report of Foreign Bank and Financial

2

Accounts," commonly known as an "FBAR." Id. ¶ 10.

The United States alleges that Defendant's accounts for TVV and CU at ANZ Bank earned interest income in the total amounts of $3,822.88, $5,090.61, $1,418.55, and $6,826.62 in taxable years 2010, 2011, 2012, and 2013, respectively. Id. ¶ 14. However, Defendant failed to report any of the interest income for taxable years 2010 and 2011. Id. ¶ 15.

For the taxable year 2012, the United States alleges Defendant reported the interest income from her ANZ Bank accounts on Schedule B and answered "Yes" to the first question on line 7a of Part III, Foreign Accounts and Trusts ("At any time during 2012, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions."), indicating that she had a foreign account. Id. ¶ 16-17. The United States alleges Defendant also answered "Yes" to the second question on line 7a ("If "Yes," are you required to file Form TD F 90-22.1 to report that financial interest or signature authority? See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements"), indicating that she was required to file an FBAR for the 2012 reporting period but Defendant did not timely file an FBAR for the 2012 calendar year. Id. ¶ 18-19.

For the taxable year 2013, the United States alleges Defendant reported the interest income for her ANZ Bank accounts for taxable year 2013 on Schedule C as part of TVV's gross receipts. Id. ¶ 16. The United States alleges that on Defendant's 2013 Schedule B, Defendant answered "Yes" to the first question on line 7a indicating that she had a foreign account, but answered "No" to the second question on line 7a indicating that she was not required to file an FBAR for the 2013 reporting period, even though she allegedly had a reportable interest in foreign bank accounts, and the aggregate balance in her foreign bank accounts exceeded $10,000. Id. ¶ 20. The United States alleges Defendant did not timely file an FBAR for the 2013 calendar year.

The United States alleges that Defendant did not file an FBAR prior to the IRS issuing an information document request on August 21, 2014 for Defendant's delinquent FBARs for the 2011, 2012, and 2013 calendar years. Id. ¶ 21. Defendant filed delinquent FBARs for 2011, 2012, and 2013 on September 11, 2014. Id. On January 1, 2015, the IRS issued an information

3

document request requesting a FBAR for the 2010 calendar year and Defendant filed her delinquent FBAR for the 2010 reporting period on February 1, 2015. Id.  Defendant did not participate in any voluntary disclosure initiative. Id. ¶ 22. The United States alleges that Defendant's failure to timely file FBARs with regards to the 2010, 2011, 2012, and 2013 calendar years was willful. Id. ¶ 29.

On September 30, 2016, pursuant to 31 U.S.C. § 5321(a)(5), an authorized delegate of the Secretary of the Treasury of the United States of America assessed Defendant with $ 678,899 31 in FBAR civil penalties. Id. ¶ 30. In addition, pursuant to 31 U.S.C. § 3717(a)(1), Defendant alleges it is entitled to recover prejudgment interest accrued on Defendant's unpaid penalties and late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2). Id. ¶ 33-36. Defendant has not paid the FBAR penalties. Id. ¶ 38. As of November 19, 2019, the United States claims that the balance due from Defendant for the 2010, 2011, 2012, and 2013 FBAR penalties, including late-payment penalties and interest, is $827,977.79. Beasley Declaration in Support of Motion for Default Judgment ("Beasley Decl."), Dkt. No. 25-1, ¶ 6.

## II. PROCEDURAL HISOTRY

On September 27, 2018, the United States filed the complaint in this action against Defendant. Dkt. No. 1. On October 11, 2018, the United States sent Defendant a request to waive service of the summons in this action. On October 29, 2018, Defendant's attorney executed the waiver on her behalf, and on November 20, 2018, the waiver was filed with the Clerk of Court. Dkt. No. 6. The parties then executed a series of stipulations to extend time for Defendant to answer or otherwise appear in this action in furtherance of settlement discussions in this matter. However, settlement discusses were unsuccessful and the United States claims that part of the breakdown in settlement discussions related to the dissipation of assets by Defendant, including her sale of real property. See Exh. 2 to Pl.'s Opp., Dkt. No. 41-1 at 41-21.

Defendant failed to answer or otherwise respond to the complaint by the September 30, 2019 deadline contained in the final stipulation. See Dkt. No. 11. The United States made clear it would seek entry of default and ultimately a default judgment. See Exh. 1, Dkt. No. 41-1 at 1-2. Defendant acknowledged that a judgment would be obtained by the United States and intended to

4

work with the United States to resolve any judgment based on her financial condition. Id.

The United States subsequently moved the Clerk of Court for entry of default against Defendant on November 13, 2019 and the Clerk entered default that same day. See Dkt. Nos. 16, 19. On November 15, 2019, Defendant signed a Joint Case Management Statement (JCMS) representing to the Court she was aware that the Clerk had entered default against her, "The parties note that the Clerk of Court has entered default against defendant Timberly Hughes on November 13, 2019," and specifically represented "Defendant has not yet filed an answer, and does not intend to answer in this action." Dkt. No. 20 at 1-2. The JCMS also stated, "[t]he parties were unable to agree to a settlement, and Ms. Hughes does not wish to contest this action." Id. at 3.

On December 6, 2019, the United States filed a motion for default judgment. Dkt. No. 25.[1] Defendant never filed an opposition to the motion for default judgment. On February 7, 2020, the Court held a hearing on the United States' motion for default judgment. Dkt. No. 33. Defendant appeared at the hearing by telephone and requested that the Court delay entry of judgment in this case for two weeks. Id. Defendant informed the court, for the first time, that she "was told by the 'Offer in Compromise' (OIC) officer for the IRS that the judgment could affect [her] OIC offer." Dkt. No. 40 at 2. Defendant wanted to make sure that she could work with the IRS. Id. The Court granted Defendant's request that the Court delay entry of judgment by two weeks. Dkt. No. 33. Defendant stated that she did not contest the motion for default judgment. Id.

On February 10, 2020, Defendant filed a "request for leave to answer out of time," which the Court construed as a motion to set aside entry of default. Dkt Nos. 34, 35. Her moving papers contend she believes she received bad legal advice from her attorney with regard to defaulting, as her attorney apparently informed her that the government would win this case. See Dkt. No. 34 at 1. In Defendant's proposed answer, she includes an argument and narrative styled "Affirmative Defenses" that acknowledges or admits some of the United States' factual allegations to which she

---

[1] In her moving papers, Defendant states that "[a]s of February 10, 2019, the Plaintiff has failed to file its application for default judgment." Dkt. No. 34 at 2. The United States has, in fact, filed its motion for default judgment and Defendant has participated in the hearing for the motion. Dkt. No. 25, 33.

earlier denied. Id. at 3-6. Defendant further attached an affidavit and numerous exhibits related to her defense. The United States filed its opposition on March 6, 2020 and the Defendant filed her reply on March 12, 2020.[2]

Defendant attached an affidavit to her reply which states that she did not understand at the time that she was agreeing to a "willful penalty." Dkt. No. 42 at 5. She claims that her attorney emailed her admitting that "he was not competent to represent" her and advised her to "default on all allegations, including the false allegations of willfulness." Id. Further, Defendant alleges that her attorney sent her a letter stating that "he could no longer consider working with [her] because [her] efforts to defense [herself] 'created a conflict of interest.'" Id. at 5-6. Defendant claims that her attorney was "working with the plaintiff in the practice of attornment, to take [her] property and property rights, create criminal liabilities for [her] and deliver [her] property and property rights to the United States." Id. at 6. Defendant further claimed that the United States overstated the value of the property the United States claims Defendant dissipated. Id. In the Defendant's reply, she also moved to strike portions of the United States' opposition.

### III. DISCUSSION

#### A. Motion to Set Aside Default

#### 1. Legal Standard

Federal Rule of Civil Procedure 55(c) authorizes a court to set aside entry of default for good cause. "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." O'Connor v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994). Rule 60(b) lists the grounds on which a default judgment may be vacated and includes "mistake, inadvertence, surprise or excusable neglect." The Ninth Circuit has held that the test that governs lifting entry of default for good cause under Rule 55(c) also governs the vacating of a default judgment under Rule 60(b)(1) for excusable neglect or mistake. TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696–97 (9th Cir.2001), overruled on other grounds by Egelhoff v.

---

[2] In her reply, Defendant states that the United States "never objected or responded to the defendant's request for leave to answer out of time." Dkt. No. 42 at 2. The United States did in fact file its opposition. Dkt. No. 41.

6

Egelhoff ex rel. Breiner, 532 U.S. 141(2001) ("TCI Group").

A court determines the existence of good cause for removing a default by considering the following factors: (1) whether the party seeking to set aside the entry of default engaged in culpable conduct that led to the default; (2) whether there is any meritorious defense to plaintiff's claims; or (3) whether setting aside the entry of default will prejudice the plaintiff. United States. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) ("Mesle"); see also Franchise Holding LLC v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004). These factors are disjunctive: "a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the entry of default." Mesle, 615 F.3d at 1091. "Crucially, however, 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" Id. (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).

### 2. Culpability

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and <u>intentionally</u> failed to answer." TCI Group, 244 F.3d at 697 (emphasis in original).[3] "'[I]ntentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092 (quoting TCI Group, 244 F.3d at 697). Defendant's conduct is culpable where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond. Mesle, 615 F.3d at 1092. "[S]imple carelessness is not sufficient to treat a negligent

---

[3] The United States has argued that the Court should apply the stricter standard articulated in Franchise Holding II, L.L.C. v. Huntington Rests. Grp., Inc., 375 F.3d 922, 925–26 (9th Cir. 2004), in which a defendant's conduct may be considered culpable "[i]f [the] defendant has received actual or constructive notice of the filing of the action and failed to answer," with no mention of that failure being intentional. However, this standard is not generally applied unless the moving party is a legally sophisticated entity or individual. Mesle, 615 F.3d at 1093. While Defendant may have had legal counsel at the time she failed to answer or otherwise respond to the complaint, it appears Defendant was likely unrepresented at the time default was entered against her. Thus, the proper standard to apply is that of TCI Group. See Mesle, 615 F.3d at 1093.

failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." Id. at 1092-93.

Here, Defendant claims that she was advised by her attorney at the time to default on the complaint because "the government always wins." Def.'s Mot., Dkt. No. 34 at 1. Defendant states that "[o]n bad advice of her attorney, the defendant did not file a written response" by the September 30, 2019 deadline for Defendant to answer or otherwise respond to the complaint. Id. The Defendant further claims "since that time the defendant has acted diligently to prepare a response without any legal training whatsoever because she could no longer afford to pay her attorney." Id. Defendant also states that her attorney admitted that "he was incompetent to defend her and . . . that her efforts to defend herself afterwards created a conflict of interest for her attorney." Def.'s Reply, Dkt. No. 42 at 2.

However, since her failure to answer by the September 30, 2019 deadline, Defendant has made repeated representations to the Court and the United States that she does not oppose default judgment. On November 15, 2019, when discussing the joint case management conference statement for the upcoming case management conference, the United States informed Defendant that if she intended to contest the underlying merits, she must move to set aside the default, and directed her to the Court's resources for pro se litigants. See Exh. 5 to Pl.'s Opp., Dkt. No. 41-1 at 28. Although Defendant initially sent out an email stating that she was "completely confused" and that she would like to request a continuance of the upcoming CMC for her to be able to review the joint statement, Defendant later told the United States to "[p]lease proceed and file the case management . . . I am fine with what is in the agreement I signed." Exhs. 6,7 to Pl.'s Opp., Dkt. No. 41-1 at 31-42. In the case management statement, Defendant affirmed that she "does not intend to answer in this action" and "does not wish to contest this action." Dkt. No. 20 at 2-3.

The United States filed a motion for default judgment on December 6, 2019. Dkt. No. 25. However, Defendant did not file a response to the United States' motion for default judgment. On February 7, 2020, this Court held a hearing on the United States' Motion for Default Judgment and Defendant represented to the Court that she did not contest default judgment, but asked the Court to delay its decision regarding the motion for default judgment for two weeks so that she

8

could pursue a global settlement with the IRS that included the FBAR claims in this case. Dkt. No. 33. However, the next business day, Defendant filed her request for leave to answer out of time. Dkt. No. 34. The United States claims that Defendant has opted to misrepresent her intentions, dissipate assets, and otherwise do what she can to bring these proceedings to a halt and hamper the United States' collection efforts.

While Defendant contends that she was erroneously counseled to default, after the default was entered, Defendant claims to have acted diligently to prepare a response. However, Defendant never communicated to the Court or the United States' counsel that she intended to contest the default. Instead, Defendant affirmatively stated on numerous occasions that she did not wish contest the action and failed to oppose the United States' motion for default judgment. Defendant now claims that she did not understand that she was agreeing to a "willful" penalty. A review of the email correspondence shows that on November 15, 2019, Defendant asked the United States' counsel why willful FBAR penalties were assessed. See Exh. 4 to Pl.'s Opp., Dkt. No. 41-1 at 24-16. The United States' counsel then confirmed on that same day that a willful FBAR penalty was proposed by the Revenue Agent. See Exh. 5 to Pl.'s Opp, Dkt. No. 41-1 at 27-30. While the Court has received no explanation regarding why Defendant failed to oppose the United States' motion for default judgment after learning of the willful FBAR penalties, the Court still finds that Defendant's conduct was likely not culpable. Defendant is proceeding pro se and may have been unable to understand correctly her legal obligations after she was no longer represented. Mesle, 615 F.3d at 1093-94.

### 3. Meritorious Defense

#### a. Legal Standard

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." See TCI Group, 244 F.3d at 700 (citations omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Id. Rather, that question 'would

be the subject of the later litigation.'" Mesle, 615 F.3d at 1094 (quoting TCI Group, 244 F.3d at 700). "If . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment." TCI Group, 244 F.3d at 697; see also Haw. Carpenters' Tr. Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986) ("To permit reopening of the case in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system.").

### b. Applicable Law in FBAR cases

The Bank Secrecy Act (BSA), 31 U.S.C. § 5311-25, requires U.S. citizens to report to the Secretary of the Treasury any relationships they have with foreign financial accounts with balances in excess of $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306 and 1010.350. Covered relationships include "having a financial interest in[] or signature authority over" a foreign bank account. 31 C.F.R. § 1010.350. For the years relevant to this action, the relationships must be disclosed on an FBAR that must be filed no later than June 30 of the year following the calendar year during which the account was held. 31 C.F.R. § 1010.306(d); United States v. Williams, 489 Fed. Appx. 655 (4th Cir. 2012). Each failure to report each bank account for each year an FBAR is required is a separate violation of 31 U.S.C. § 5321. See United States v. Boyd, No. CV 18-803-MWF (JEMX), 2019 WL 1976472, at *5 (C.D. Cal. Apr. 23, 2019) appeal docketed, No. 19-55585 (9th Cir.); United States v. Shinday, No. 2:18-CV-06891-CAS-EX, 2018 WL 6330424, at *4 (C.D. Cal. Dec. 3, 2018).

The IRS is authorized to assess FBAR penalty against individuals who violate the FBAR reporting requirements. See 31 U.S.C. §§ 5314 and 5321. A penalty for a non-willful FBAR violation cannot exceed $10,000 per violation but a penalty for a willful FBAR violation can be the greater of $100,000 or 50% of the balance in the account at the time of the violation for each violation. 31 U.S.C. §§ 5321(a)(5)(B)-(D). A person is subject to the willful failure to file an FBAR penalty under § 5321(a)(5) if the following four elements are met: 1) The person is a United States person; 2) The person had an interest in or authority over a foreign financial account; 3) The financial account had a balance that exceeded $10,000 at some point during the reporting period; and 4) The person willfully failed to disclose the account and file an FBAR form

10

for the account. See United States v. Pomerantz, No. C16-689, 2017 WL 4418572, at *2-3 (W.D. Wash. Oct. 5, 2017); United States v. Toth, 2017 WL 1703936, at *4 (D. Mass. May 2, 2017); United States v. McBride, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012); Bedrosian v. United States, No. CV 15-5853, 2017 WL 1361535, at *3 (E.D. Pa. Apr. 13, 2017).

Although the term "willful" is not defined in the code section, in civil cases, willfulness includes both knowing and reckless violations of a standard. See 31 U.S.C. § 5321; Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57 (2007). Reckless disregard of a statutory duty satisfies the willfulness standard. McBride, 908 F.Supp.2d at 1204; Bedrosian v. United States Dep't of Treasury, Internal Revenue Serv., No. CV 15-5853, 2017 WL 4946433, at *4 (E.D. Pa. Sept. 20, 2017). Recklessness is evaluated using an objective standard that evaluates whether an action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Bedrosian, 2017 WL 4946433, at *4 (quoting Safeco Ins. Co., 551 U.S. at 68). The relevant inquiry is whether the failure to disclose the information was purposeful instead of inadvertent, not whether the taxpayer subjectively believed he was not required to file an FBAR. See Lefcourt v. United States, 125 F.3d 79, 83 (2d Cir. 1997); McBride, 908 F.Supp.2d at 1210. Acting with "'willful blindness' to the obvious or known consequences of one's actions" also satisfies the willfulness standard. Bedrosian, 2017 WL 4946433, at *4 (quoting McBride, 908 F.Supp.2d at 1205). Evidence of conduct intended to "conceal or mislead sources of income or other financial information" is evidence of willful blindness and recklessness. United States v. Williams, 489 Fed.Appx. 655, 659-60 (4th Cir. 2012). However, "an improper motive or bad purpose is not necessary to establish willfulness in the civil context." McBride, 908 F.Supp.2d at 1204 (internal citations omitted). Willfulness can be shown through circumstantial evidence and reasonable inferences drawn from the facts before the court. Id.

Courts have reviewed de novo whether the account holder was willful. See United States v. Williams, 2010 WL 3473311, at *1 (E.D. Va. 2010), rev'd on other grounds, 489 Fed. Appx 655 (4th Cir. 2012); McBride, 908 F. Supp. 2d at 1201; Bedrosian, 2017 WL 4946433, at *2. However, when reviewing the penalty amount, courts have reviewed whether the penalty's size is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§

11

706(2)(A); see also United States v. Williams (Williams III), No. 1:09-cv 437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014), Moore v. United States, No. C13- 2063RAJ, 2015 WL 1510007, at *7 (W.D. Wash. Apr. 1, 2015).

### c. The sufficiency of United States' claim under Fed. R. Civ. P. 12(b)(6)

The United States' complaint alleges that during the relevant years, Defendant was a U.S. citizen; Defendant was the sole owner of the business whose bank accounts are at issue; Defendant had signatory authority and a financial interest in the bank accounts located in a foreign county as described above; the accounts had an aggregated balance that exceeded $10,000 in U.S. currency; and Defendant failed to file an FBAR by the applicable deadline. See Compl. ¶¶ 8, 23-28. The complaint further alleges that Defendant's failure to timely file FBARs was willful. See id. ¶ 29.

Defendant claims that "the complaint fails to state a cause of action or claim upon which relief can be granted for the reason that the complaint includes false and erroneous statements and is made in bad faith." Def.'s Proposed Answer, Dkt. No. 34 at 5. Defendant states that she did disclose the facts of her relationship to the foreign interests but "it's more a question of which form she used." Id. In addition, Defendant states that "it is quite obvious that the government was not prejudiced in any way regarding disclosures or no disclosures, judging by what appears to be an unlimited access to all the facts in the matter and very clearly set forth in the pleadings." Id. Even assuming these facts to be true, Defendant's moving papers fail to explain why the United States failed to state a claim in its compliant. Thus, as to liability, Defendant has not alleged sufficient facts that, if true, would constitute a defense that the United States failed to state a claim.

### d. Willfulness Related Arguments

Defendant argues that she had reasonable cause, the criminal standard of willfulness should apply, and that an IRS auditor had told Defendant that willful penalties would not be asserted in this case. The United States argues that such arguments are not well-taken because a reasonable cause defense only apples where the penalty assessed is for a non-willful violation of the statute. See 31 U.S.C. § 5321(a)(5)(C)(ii). Furthermore, the United States argues that the criminal standard of willfulness does not apply because the applicable law clearly articulates that

12

reckless disregard of a statutory duty satisfies the willfulness standard in FBAR cases. See United States v. Ott, No. 18-CV-12174, 2020 WL 913814, at *4 (E.D. Mich. Feb. 26, 2020); McBride, 908 F. Supp. 2d at 1204. Finally, the United States argues that allegations of an IRS employee's subjective views regarding the defendant's conduct are irrelevant to the willfulness of Defendant's conduct because courts review an individual's liability for the FBAR penalty de novo. Bedrosian v. U.S., Dep't of Treasury, IRS, 912 F.3d 144, 152-53 (3d Cir. 2018) (citations omitted).

Although Defendant may not have clearly articulated the legal standard for willfulness, in her proposed answer Defendant alleges that she did not act willfully in this case. Defendant states that she "did not voluntarily, intentionally violate a known legal duty." Def.'s Proposed Answer, Dkt. No. 34 at 6. Defendant further alleges that "she was unaware of the FBAR filing requirement and was not advised of the requirement by any of the professional advisors she consulted with regarding her US tax filings." Id. Defendant also states that she was not hiding her accounts because she attempted to report the interest from the accounts on at least her 2012 and 2013 tax returns. Id. Defendant states that her failure to file the FBAR was due to confusion and mistake, rather than willfulness. Id. Defendant alleges that she is a bookkeeper, not a professional return preparer, and she was not familiar with FBAR and other international filing rules and forms. Id.

In Defendant's affidavit, Defendant further states that she was confused and thought that she "only had to declare if there were amounts over $10,000 at the end of the year." Def.'s Aff., Dkt. No. 34 at 13.[4] Defendant further explains that every 18 months, the TVV checking account "has the mortgage loan debt rolled over to fund the loan and then pay a new mortgage loan, it happens the same day, as the New Zealand Bank treats the account as an escrow account." Id. Defendant alleges that she "did not declare the loan funds as the high balance as it was not [hers] and went in and out the same day. [She] had no access to these funds." Id. Finally, in her affidavit, Defendant states that she is not an accountant and, while she has helped family and friends with simple tax returns, she has always hired an independent accountant to review the

---

[4] Defendant's affidavit and the subsequent attachments also discuss arguments related to civil penalties associated with a failure to file forms 926 and 5471. Dkt. No. 34 at 9-13, 15-30. These arguments do not appear to relate to the FBAR penalties at issue in this case.

13

1 returns that she prepares. Id. at 14.

2 Here, the Court finds Defendant has met the minimal nature of the burden she was supposed to carry and has alleged specific facts that would constitute a defense to the complaint. See Mesle, 615 F.3d at 1094; see also TCI Group, 244 F.3d at 700.

### e. Penalty Amounts

In an attachment to Defendant's affidavit, Defendant's prior counsel argued that if the willful penalty is to be limited to 50% of the highest aggregate balance of all unreported foreign financial accounts during the years under examination, the auditor's computation is incorrect. Exh. B to Def.'s Aff., Dkt. No. 34 at 35. This is because the penalty is based, in part, on the high balance in the account ending in 0600 in March 2013. Id. Defendant's prior counsel represented that this balance is incorrect because it includes a deposit error ("loan payment reversal") and that "the remaining balance included almost entirely the proceeds of a loan which was only in [Defendant's] account for one day." Id. Defendant's prior counsel argued that this was also true of other accounts. Id.

The United States argues that the amount of the FBAR penalty asserted by the IRS is discretionary, and a court must hold unlawful and set aside agency actions, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The United States further argues that "the Court must not substitute its judgment for the agency's, and must only review the record to ensure that the agency engaged in reasoned decision-making and that there was a 'rational connection between the facts found and the choice made.'" Williams, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014). The statute imposing civil penalties at 31 U.S.C. § 5321(a)(5)(B) provides a penalty of a maximum of $100,000 per violation or 50% of the account balance at the time of the violation (i.e. dual maximum).

The United States argues that the IRS used 50% of the maximum aggregate account balance amongst the four years at issue to determine the total penalty amount, and then allocated a proportional amount to each of the years at issue. See Declaration of Jonathan Lauren, Dkt No. 25-2, ¶¶ 7, 8, 9, 10. However, given the 23 separate violations to report foreign bank accounts, the

statute provides for the imposition of up to $2.3 million in civil penalties for the alleged willful violations committed by Defendant. The United States argues that the IRS exercised its discretion in asserting a total of $678,899 of FBAR penalties for the four years at issue and no penalty exceeded the limit imposed by 31 U.S.C. § 5321(a)(5)(B).

Because the Court has determined that Defendant has alleged specific facts that would constitute a defense related to the United States' allegations of willfulness, the Court need not determine whether Defendant has raised a defense related to the willfulness penalty amount at this time.

#### f. Delay Associated with Setting Aside Default

The United States argues that setting aside the default would be a pointless delay in part because "it is clear that the material facts are undisputed to establish that Ms. Hughes willfully failed to file FBARs for the 2010, 2011, 2012, and 2013 calendar years, that the IRS appropriately assessed civil penalties, the penalties remain unpaid, and the United States is entitled to a money judgment in this action." Pl.'s Opp., Dkt. No. 41, at 22. As discussed above, the Court has determined that Defendant has alleged specific facts that would constitute a defense in her argument regarding willfulness. "[A] case should, whenever possible, be decided on the merits." Mesle, 615 F.3d at 1091 (internal quotations and citations omitted).

### 4. Prejudice

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." TCI Group, 244 F.3d at 701. The United States argues that Defendant's deliberate conduct in choosing to default, and her bad faith conduct in further delaying this litigation has prejudiced the United States. The United States claims that Defendant dissipated her assets during settlement negotiations for less than the value of the assets. See Pl. Opp., Dkt. No. 41, at 7; Exh. 2 to Pl.'s Opp., Dkt. No. 41-1 at 41-21. However, Defendant states in her affidavit that the United States had overstated the value of the property she sold. Def. Aff., Dkt. No. 42 at 6.

The United States claims to have also suffered prejudice because it has spent a significant amount of time preparing the motion for default judgment, and incurred costs in attending the

15

hearing on its motion for default judgment. The United States requests that the Court order Defendant to pay the United States' attorney fees and other costs associated with entering the default or obtaining the default judgment. See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec, 854 F.2d 1538, 1546-47 (9th Cir. 1988). However, the United States has not stated how much it has incurred in attorney fees and other costs as a result of its efforts to obtain the entry of default or default judgment. While it is likely that the United States has suffered some prejudice, the Court finds that that this case should be decided on the merits. Further, because Defendant is proceeding pro se the Court declines to sanction her at this time.

### B. Motion for Default Judgment

On December 6, 2019, the United States filed a motion for default judgment. Dkt. No. 25. On February 7, 2020, the Court held a hearing on the United States' motion. Dkt. No. 33. The Court finds good cause to vacate the default and, thus, denies the United States' motion for default judgment.

### C. Motion to Strike

In Defendant's reply in support of her motion to set aside entry of default, Defendant also moved to strike portions of the United States' opposition. The Court finds that Defendant's motion to strike is moot because her motion to set aside has been granted.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for to set aside entry of default, **DENIES** Plaintiff's motion for default judgment, and **DENIES** Defendant's motion to strike. The Court **ORDERS** Defendant to respond to the United States' complaint by filing a formal answer under Rule 8 or a motion under Rule 12 of the Federal Rules of Civil Procedure no later than Friday, May 1, 2020.

**IT IS SO ORDERED.**

Dated: March 31, 2020

JOSEPH C. SPERO
United States Magistrate Judge