DAVID A. HUBBERT
Deputy Assistant Attorney General

TY HALASZ (Colorado Bar)
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
*Tel*. (202) 307-6484
*Fax*. (202) 307-0054
Ty.Halasz@usdoj.gov

*Counsel for the United States*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>TIMBERLY E. HUGHES,<br><br>Defendant. | Case No. 3:18-CV-5931-JCS<br><br>**UNITED STATES' POST-TRIAL BRIEF ON PENALTY AMOUNTS** |

Pursuant to the Court's Findings of Fact and Conclusions of Law Regarding Willfulness (Doc. 162 ¶ 188), the United States submits this brief in support of the penalty amounts assessed against Defendant Timberly Hughes.

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Background ................................................................................................................. 2

III. Legal Standard ............................................................................................................ 4

IV. Argument .................................................................................................................... 5

    A. The penalty amounts are in accordance with both the law and IRS internal procedures, and are thus not arbitrary, capricious, or an abuse of discretion. .................................... 6

    B. The IRS's computation using 2013's highest aggregate balance was proper. ................ 7

    C. Ms. Hughes owes interest and a late-payment penalty for her failure to pay. ............. 10

    D. Should the Court find that the IRS abused its discretion, remand is required. ............ 11

V. Conclusion ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Power & Light Co. v. SEC*,
 329 U.S. 90 (1946) ................................................................................................................ 5, 6

*Anderson v. Liberty Lobby Inc.*,
 477 U.S. 242 (1986) ..................................................................................................................4

*Arnold v. Morton*,
 529 F.2d 1101 (9th Cir. 1976) ................................................................................................10

*Bedrosian v. United States*,
 No. 15-CV-5853, 2021 WL 720271 (E.D. Pa. Jan. 29, 2021) ..................................................8

*Burlington Truck Lines v. United States*,
 371 U.S. 156 (1962) ..................................................................................................................5

*Fargo v. Comm'r*,
 447 F.3d 706 (9th Cir. 2006) ....................................................................................................9

*Fla. Power & Light Co. v. Lorion*,
 470 U.S. 729 (1985) ................................................................................................................11

*Jones v. United States*,
 No. 19-CV-4950, 2020 WL 2803353 (C.D. Cal. May 11, 2020) ......................................... 8, 9

*Keenan v. Allan*,
 91 F.3d 1275 (9th Cir. 1996) ....................................................................................................5

*Kimble v. United States*,
 991 F.3d 1238 (Fed. Cir. 2021) ............................................................................................ 5, 8

*Landa v. United States*,
 153 Fed. Cl. 585 (2021) ............................................................................................................8

*Motor Vehicle Mfrs. Assoc. of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ....................................................................................................................5

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
 747 F.3d 581 (9th Cir. 2014) ....................................................................................................5

*Robinson v. Shell Oil Co.*,
 519 U.S. 337 (1997) ..................................................................................................................6

*United States v. Collins*,
 No. 18-CV-1069, 2021 WL 456962 (W.D. Pa. Feb. 8, 2021) ..................................................8

*United States v. Gentges*,
    531 F. Supp. 3d 731 (S.D.N.Y. 2021) ..................................................................................8, 9

*United States v. McBride*,
    908 F. Supp. 2d 1186 (D. Utah 2012) ........................................................................................8

*United States v. Rum*,
    995 F.3d 882 (11th Cir. 2021) ..........................................................................................5, 7, 8

*United States v. Schwarzbaum*,
    — F. Supp. 3d —, 2020 WL 1316232 (S.D. Fla. Mar. 20, 2020) ..................................8, 9, 10

*United States v. Williams*,
    No. 09-CV-0437, 2014 WL 3746497 (E.D. Va. June 26, 2014) ...........................................5, 8

*White v. York Int'l Corp.*,
    45 F.3d 357 (10th Cir. 1995) .....................................................................................................4

*Zetwick v. Cty. of Yolo*,
    850 F.3d 436 (9th Cir. 2017) .....................................................................................................4

**Federal Statutes**

5 U.S.C. § 706 ..................................................................................................................................5
28 U.S.C. § 1961 ............................................................................................................................10
31 U.S.C. § 3717 .........................................................................................................................4, 10
31 U.S.C. § 5321 ..........................................................................................................5, 6, 7, 8, 9
33 U.S.C. § 1319 ..............................................................................................................................6
42 U.S.C. § 256b ..............................................................................................................................6

**Federal Regulations**

31 C.F.R. § 901.9 ..........................................................................................................................10

**Federal Rules**

Fed. R. Civ. P. 56 .........................................................................................................................4, 5

**Other Federal Authorities**

I.R.M. § 4.26.16.4.5 (July 1, 2008) ..............................................................................................8, 9
I.R.M. § 4.26.16.4.7 (July 1, 2008) ..................................................................................................9
I.R.M. § 4.26.16.6.5.3 (Nov. 6, 2015) ..........................................................................................6, 9
Interim Guidance for Report of Foreign Bank and Financial Accounts (FBAR)
    Penalties (May 13, 2015) .................................................................................................3, 6, 7

## I. INTRODUCTION

Since at least 1991, Timberly Hughes has handled financial matters in a professional capacity. *See* Doc. 162 ¶ 13. During all this time, she "gathered documents necessary for tax return preparation". Doc. 162 ¶ 15. Her proficiency in accounting was so significant and sophisticated that she came to provide bookkeeping services for a couple of billionaires, working "closely with the couple's tax attorneys and tax people." *See* Doc. 162 ¶¶ 17–18, 20, 22. Though she was a return preparer on a smaller scale, her degree of confidence in her return preparing abilities was so high — "adventurous", even — that she used TurboTax in "forms mode", which was functionally the same as preparing a tax return out of whole cloth by hand, something she used to do. *See* Doc. 162 ¶¶ 23–24, 50–51, 53, 55, 130–31. Nevertheless, Ms. Hughes "believed checking the box indicating she was required to file an FBAR" in 2012 "satisfied her obligations" on the assumption that TurboTax would do it for her. Doc. 162 ¶ 177. The Court found Ms. Hughes was not credible because, using "forms mode", she "would have been aware that she never completed an FBAR form, and that the paper return she filed did not include such a form." Doc. 162 ¶ 177. She saw all the warnings and she ignored them. The result was that her foreign accounts, through which well over a million dollars flowed, stayed hidden.

For these reasons and others, the IRS assessed willful FBAR penalties against her. For these reasons and others, the Court found that Ms. Hughes' failure to file an FBAR for calendar years 2012 and 2013 was willful. Doc. 162 ¶ 184. Reviewing the penalty amounts for an abuse of discretion, this Court must decide whether the assessments are in accordance with the law. The governing statute gives the IRS wide discretion to determine penalty amounts but does not delineate any guidelines for using that discretion. Congress has left the IRS to its own devices. Still, the IRS has developed sound guidelines for exercising its statutory discretion. Those guidelines were followed here with precision. As a result, the penalty amounts were proper, commensurate with the harm caused by the violations, and in accordance with the law. The penalties should be affirmed.

## II. BACKGROUND

On September 30, 2016, pursuant to 31 U.S.C. § 5321(a)(5), a duly authorized delegate of the Secretary of the Treasury of the United States of America timely assessed Ms. Hughes with the following civil penalties:

| Year | Financial Institution | Corporate Entity | Account Numbers | Penalty Assessments |
|---|---|---|---|---|
| 2010 | ANZ Bank | TVV | -1000, -1004, -0600, -0625 | $32,845 |
| 2011 | ANZ Bank | TVV | -1005, -1000, -1004, -1006, -0600, -0625 | $205,545 |
| 2012 | ANZ Bank | TVV | -1005, -1000, -1004, -1006, -0600, -0625 | $167,316 |
| 2013 | ANZ Bank | TVV | -1005, -1000, -1004, -1006, -0600, -0625 | $273,193 |
|  |  | CU | -4400 |  |
|  |  |  | **Total** | **$678,899** |

*See* Doc. 1 ¶ 30. These FBAR penalties were assessed pursuant to 31 U.S.C. § 5321(a)(5)(C), due to Ms. Hughes' willful failure to timely disclose each of the TVV and CU bank accounts at ANZ Bank. Doc. 1 ¶ 31.

These penalty amounts were calculated by Revenue Agent Jonathan Lauren. **Exhibit 1**, Lauren Decl. ¶ 7. R.A. Lauren calculated the specific penalty amounts based on 50 percent of the highest aggregate foreign bank account balance during the 2013 calendar year. Lauren Decl. ¶ 9. The following table shows the highest balance in each account during each calendar year.

| ANZ Account | Corporate Entity | 2010 Year | 2011 Year | 2012 Year | 2013 Year |
|---|---|---|---|---|---|
| -1005 | TVV | N/A | $39,314 | $43,068 | $44,269 |
| -1000 | TVV | $9,828 | $10,651 | $11,656 | $11,823 |
| -1004 | TVV | $76,877 | $42,512 | $46,470 | $47,875 |

| | | | | | |
|---|---|---|---|---|---|
| -1006 | TVV | N/A | $34,857 | $38,169 | $38,566 |
| -4400 | CU | N/A | N/A | N/A | $21,993 |
| -0600 | TVV | $48,249 | $47,521 | $587,348 | $1,128,598 |
| -0625 | TVV | $28,288 | $846,726 | $104,866 | $64,674 |
| Total | | $163,242 | $1,021,582 | $831,577 | $1,357,799 |

Lauren Decl. ¶ 10; *see* **Exhibits D–J**, Financial Statements for Each Account;[1] **Exhibit 2**, Table Matching Balances to Financial Statements.  The highest aggregate balance for 2013 was $1,357,799, 50 percent of which is $678,899.  Lauren Decl. ¶ 9.

R.A. Lauren then proportionately allocated $678,899 to across the four years based on the ratio of the highest aggregate balance for each year to the $3,374,200 total highest aggregate balance for all four years combined as set forth in the following table.

| Year | Highest Aggregate Balance | Ratio to Total Highest Aggregate Balance | Resulting Penalty Amount |
|---|---|---|---|
| 2010 | $163,242 | 4.84% | $32,845 |
| 2011 | $1,021,582 | 30.28% | $205,545 |
| 2012 | $831,577 | 24.65% | $167,316 |
| 2013 | $1,357,799 | 40.24% | $273,193 |
| Total | $3,374,200 | 100% | $678,899 |

Lauren Decl. ¶ 11.  R.A. Lauren obtained the method used to calculate the penalty amounts from IRS guidance.  Lauren Decl. ¶ 8; *see* **Exhibit 3**, Interim Guidance for Report of Foreign Bank and Financial Accounts (FBAR) Penalties (May 13, 2015), *available at* https://www.irs.gov/pub/foia/ig/spder/SBSE-04-0515-0025%5b1%5d.pdf.

R.A. Lauren also calculated the statutory maximum for the penalties, which was $400,000 for 2010, $600,000 for 2011, $600,000 for 2012, and $700,000 for 2013.  Lauren Decl.

---

[1] The financial statements attached to R.A. Lauren's declaration have been redacted to remove potentially sensitive numbers.  Should the Court wish to view them unredacted, the United States would be happy to file them under seal.

¶¶ 12–13. He did not apply any of the IRS's mitigation guidelines because the IRS had determined a fraud penalty against Ms. Hughes under 26 U.S.C. § 6663. Lauren Decl. ¶ 15. R.A. Lauren exercised discretion in calculating the penalty amounts, which were well below the statutory maximums. Lauren Decl. ¶ 14. He thought they appropriately reflected the harm caused by the FBAR violations. Lauren Decl. ¶ 14.

R.A. Lauren's recommendations were set forth in IRS Form 886-A, Explanation of Items. **Exhibit B**. With regard to the penalty amounts, R.A. Lauren summarized the IRS guidance and stated that the penalties "were computed based on this general guidance and are within the statutory limitations." Form 886 at 12–13. The computations were then appended to the Form 886-A. **Exhibit C**, Computations. Ms. Hughes appealed to the IRS Office of Appeals, but the recommendation was sustained. **Exhibit K**, Appeals Denial. On September 30, 2016, the penalties were assessed and the IRS sent Ms. Hughes a letter demanding payment of the outstanding penalties. **Exhibit A**, Assessments; **Exhibit L**, Demand for Payment. Removing the 2010 and 2011 penalties, the total penalties assessed for 2012 and 2013 were $440,509 — $167,316 for 2012 added to $273,193 for 2013. The outstanding balance of these penalties is therefore $599,924.98 as of November 30, 2021, and continues to accrue statutory additions. *See* 31 U.S.C. § 3717(a)(1), (b)(2), (e)(2).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits the entry of a judgment when no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine factual dispute exists where the evidence presented is so contradictory that judgment could enter for either party at trial. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In evaluating the motion, the Court views all evidence in the light most favorable to the nonmovant. *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.

*See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment, the responding party must "identify with reasonable particularity the evidence that precludes summary judgment."  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## IV.  ARGUMENT

In its Findings of Fact and Conclusions of Law Regarding Willfulness, the Court concluded that Ms. Hughes willfully failed to file an FBAR only for 2012 and 2013.  Doc. 162 at 25.  As a result, with the Court's finding that the United States did not establish that Ms. Hughes willfully failed to file an FBAR for calendar years 2010 and 2011, the Court need not evaluate the amounts of those penalties.  The question for the Court is therefore whether the IRS's calculation of the 2012 and 2013 penalties fell within a legitimate exercise of agency discretion.  It did.  The 2012 and 2013 penalty amounts were determined in accordance with the governing law and the IRS's own procedures, and must stand because they are not arbitrary, capricious, or an abuse of discretion.

Because the FBAR statutes give the Secretary of Treasury discretion to impose all manner of penalties below the statutory maximum, 31 U.S.C. § 5321(a)(5)A), review of the penalty assessment is limited to whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act (APA), 5 U.S.C.§ 706(2)(A); *see Kimble v. United States*, 991 F.3d 1238, 1242 (Fed. Cir. 2021); *United States v. Rum*, 995 F.3d 882, 888 (11th Cir. 2021); *United States v. Williams*, No. 09-CV-0437, 2014 WL 3746497 at *1 (E.D. Va. June 26, 2014).  Although the Court's inquiry is thorough, this "standard of review is highly deferential; the agency's decision is entitled to a presumption of regularity, and we may not substitute our judgment for that of the agency."  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).  Still, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Assoc. of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  Only if the penalty "chosen is unwarranted in

law or is without justification in fact should a court attempt to intervene in the matter." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112–13 (1946).

**A.     The penalty amounts are in accordance with both the law and IRS internal procedures, and are thus not arbitrary, capricious, or an abuse of discretion.**

31 U.S.C. § 5321(a)(5) authorizes the government to impose an FBAR penalty in the amount equal to the greater of 50 percent of the balance of each account at the time of the violation or $100,000 per violation, whichever is greater.  When interpreting a statute, the first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  If so, the "inquiry must cease" so long as "the statutory scheme is coherent and consistent." *Id.*

Neither the statute nor the regulations governing FBARs set forth any guidelines for exercising the discretion they give the Secretary to determine penalty assessments.  Congress did not require regulations regarding the amount of the penalty, enumerate factors for the Secretary to consider, or provide for the redetermination of the penalty by a court.  *Cf., e.g.*, 42 U.S.C. § 256b(d)(1)(B)(vi) (providing for civil money penalties for violation of regulations regarding price limits on certain drugs); 33 U.S.C. § 1319(d) (stating that person violating aspects of the Clean Water Act "shall be subject to a civil penalty," and stating factors for the court to consider in setting amount).

The IRS has, however, issued its own internal guidelines for examiners.  In 2015, at the time that R.A. Lauren calculated the penalty amounts for 2012 and 2013, the IRS had issued a memorandum containing guidance for such calculations.  *See* Ex. 3, Interim Guidance; *see also* I.R.M. § 4.26.16.6.5.3(2) (Nov. 6, 2015) (formalizing the Interim Guidance in the Internal Revenue Manual).  The Interim Guidance provided that "the total penalty amount for all years under examination will be limited to 50 percent of the highest aggregate balance of all unreported foreign financial accounts during the years under examination." Ex. 3, Att. 1 at 1.  To determine the penalty amount for each year, the Interim Guidance then instructs examiners to

allocate "the total penalty amount to all years for which the FBAR violations were willful based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined," subject to the statutory maximum. Ex. 3, Att. 1 at 1.

As the declaration of R.A. Lauren makes clear, he followed this guidance with precision. He took "50 percent of the highest aggregate balance of all unreported foreign financial accounts during the years under examination", which was $678,899 of 2013's aggregate balance of $1,357,799. Ex. 3, Att. 1 at 1; *see* Lauren Decl. ¶¶ 9–10. He then allocated that amount across all four years proportionate to the share "of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined." Ex. 3, Att. 1 at 1; *see* Lauren Decl. ¶ 11. The Interim Guidance expressly incorporated the "maximum penalty limitation in 31 U.S.C. § 5321(a)(5)(C) for each year." Ex. 3, Att. 1 at 1. Consistent with the Interim Guidance's express incorporation of the "maximum penalty limitation in 31 U.S.C. § 5321(a)(5)(C) for each year", Ex. 3, Att. 1 at 1, R.A. Lauren's guidance-based approach was in accordance with the statute because, with six accounts open in 2012 and seven open in 2013, the maximum penalties thereunder were $600,000 for 2012 and $700,000 for 2013, *see* Lauren Decl. ¶¶ 12–13.

Having calculated penalty amounts below the statutory maximum and wholly consistent with its own internal guidance, the IRS cannot be said to have acted arbitrarily or to have abused its discretion.[2] The penalties must therefore be affirmed.

**B.     The IRS's computation using 2013's highest aggregate balance was proper.**

Courts treat FBAR penalty calculations with extreme deference, even summarily approving penalties calculated under I.R.M. guidelines. *See, e.g.*, *United States v. Rum*, 995 F.3d 882, 893–95 (11th Cir. 2021) (finding IRS procedures regarding setting FBAR penalties to be

---

[2] If anything, Ms. Hughes has wound up in the bonus. Had the IRS found her willful for only 2012 and 2013 as the Court did, the Interim Guidance would direct two penalty assessments in the exact same aggregate amount, as the approach would still be to take half of 2013's highest aggregate balance and amortize it across the two years. *See* Ex. 3, Att. at 1. Doing so would remain under the statutory maximum.

Post-Trial Brief on Penalty Amounts           7

sufficient and upholding penalty ($690,000) where those procedures were followed); *Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021) (affirming district court's decision that imposition of maximum penalty ($697,299) was not arbitrary or capricious where IRS followed its guidelines); *Landa v. United States*, 153 Fed. Cl. 585, 601 (2021) (finding no abuse of discretion for a 50-percent penalty ($3,173,464) consistent with the I.R.M.); *United States v. Collins*, No. 18-CV-1069, 2021 WL 456962 at *7 (W.D. Pa. Feb. 8, 2021) (total penalties of $308,064); *Bedrosian v. United States*, No. 15-CV-5853, 2021 WL 720271 at *2 (E.D. Pa. Jan. 29, 2021) (total penalty of $975,789.17); *United States v. Williams*, No. 09-CV-0437, 2014 WL 3746497 at *2 (E.D. Va. June 26, 2014); *United States v. McBride*, 908 F. Supp. 2d 1186, 1214 (D. Utah 2012). Here, the Court should follow the weight of the authority, including the two Circuits to address these issues, and affirm the penalties because the IRS properly followed its own (robust) procedures in setting Ms. Hughes' penalty amounts.

Ms. Hughes might nonetheless cite other FBAR cases in an attempt to discredit the penalty amounts here. A few courts reviewing FBAR penalty assessments have reversed or remanded penalty amounts because (1) the IRS did not have enough information to calculate the account balances as of June 30 of the following year, which is the "time of the violation" under the IRS's internal guidelines (I.R.M. § 4.26.16.4.5(1) (July 1, 2008)), or (2) the IRS had such information but used a balance from a different date. *See, e.g.*, *United States v. Gentges*, 531 F. Supp. 3d 731, 753–54 (S.D.N.Y. 2021); *Jones v. United States*, No. 19-CV-4950, 2020 WL 2803353 at *8 (C.D. Cal. May 11, 2020); *United States v. Schwarzbaum*, — F. Supp. 3d —, No. 18-CV-81147, 2020 WL 1316232 at *13 (S.D. Fla. Mar. 20, 2020).[3]

---

[3] Implicit in these cases is the notion that amortizing 50 percent of the highest aggregate balance over multiple years for multiple violations begins the calculation with the "incorrect base amounts" because the 50-percent amount should come from the balance as of June 30. *See Schwarzbaum*, 2020 WL 1316232 at *13. The statute contains no such requirement. It merely uses the 50-percent provision to set one possible yearly statutory ceiling, and contains no provision or limitation forcing the IRS to begin its penalty calculation with the exact amount at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C)–(D).

Post-Trial Brief on Penalty Amounts                 8

Importantly, these cases are all distinguishable, at a minimum, because they involved penalty assessments above $100,000 per account per year — one possible statutory ceiling — and under 50 percent of the account balances on June 30 — the other possible ceiling. *See Gentges*, 531 F. Supp. 3d at 735–36 (total penalties of $903,853 where the per-account ceiling was $200,000); *Jones*, No. 19-CV-4950, Doc. 21-2 at 3–4, 8 (Apr. 6, 2020) (penalties of $1,890,074 and $751,685 against married taxpayers when the per-account ceiling was $1,200,000 and $700,000 respectively); *Schwarzbaum*, 2020 WL 1316232 at *3, 13 (total penalties of $13,729,591 where the per-account ceiling was $3,400,000). Thus, in each of these cases, the statutory maximum implicated by the penalties was the 50-percent ceiling.

Here, the statutory maximum implicated by the penalties was the per-account ceiling. The statute, by its plain terms and their plain meanings, affixes the 50-percent approach to the time of the violation, but does not do so for the per-account approach. *See* 31 U.S.C. § 5321 (including "at the time of the violation" only in subsection (D) regarding account balances). Consequently, in following the Interim Guidance to calculate Ms. Hughes' penalty amounts, the IRS was not obliged to begin with, or even consider, her June 30 account balances.[4] And even though the IRS did not have information from which her June 30, 2014, account balances could be determined, *see* Lauren Decl. ¶ 13, the I.R.M. at all times gave R.A. Lauren the discretion to estimate June 30 balances using balances on other dates if the facts and circumstances warranted it. *See* I.R.M. § 4.26.16.4.7 (July 1, 2008).

R.A. Lauren considered what the appropriate penalties were, Lauren Decl. ¶ 14, considered the statutory maximum, Lauren Decl. ¶ 13, and particularly considered the legal issues surrounding Ms. Hughes' willful failure to file an FBAR, Form 886 at 11–12. These

---

[4] Reversal or remand in this situation necessarily implies that compliance with the Interim Guidance, now at I.R.M. § 4.26.16.6.5.3 (Nov. 6, 2015), is less important than compliance with the I.R.M.'s provision that June 30 is the "time of the violation". *See* I.R.M. § 4.26.16.4.5(1) (July 1, 2008). Given that no part of the I.R.M. carries the force of law, see *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006), this prioritization would be problematic. It would also be illogical to elevate a provision of the I.R.M. that was not directly implicated in Ms. Hughes' case over those that were.

Post-Trial Brief on Penalty Amounts                 9

issues would not be any different a second time around the track to start with the purportedly correct "base amounts". *See Schwarzbaum*, 2020 WL 1316232 at *13. In other words, the Court should have "subjective certainty" that the outcome is correct. *See Arnold v. Morton*, 529 F.2d 1101, 1105 (9th Cir. 1976).

### C. Ms. Hughes owes interest and a late-payment penalty for her failure to pay.

There are two primary statutory accruals due to Ms. Hughes' failure to pay the FBAR penalties against her: interest and a late-payment penalty. Interest accrues on debts owed to the United States at a rate of 1% per annum, beginning from the date that notice of the amount due is first mailed to the person who owes the debt. 31 U.S.C. § 3717(a)(1), (b)(2); *see also* 31 C.F.R. § 901.9(b)(3) (the interest rate as initially charged is fixed for the duration of the debt, interest is only charged on the assessed amount (not interest, penalties, or administrative costs), and interest and penalties are not compounded). While Ms. Hughes had a 30-day grace period from the date of the demand letter to make a payment and have the accrued interest forgiven, she did not make payment within that 30-day period, and interest accrued from the date of notice of the debt and demand for payment — September 30, 2016. *See* 31 U.S.C. § 3717(b)(2); Ex. L, Demand for Payment at 1. Interest on the 2012 and 2013 penalties has accrued at the statutory rate to $22,773.71 as of November 30, 2021, *see* 31 U.S.C. § 3717(a)(1), and continues to accrue.

In addition, a late-payment penalty must be assessed for the part of the debt that remains unpaid after 90 days. 31 U.S.C. § 3717(e)(2). As of November 30, 2021, the amount of the yearly 6% late-payment penalty applicable to Ms. Hughes' 2012 and 2013 FBAR penalties is $136,642.27. *See id.* Taking into account interest, the late-payment penalty, and the FBAR penalty, Ms. Hughes is indebted to the United States in the total amount of $599,924.98 as of November 30, plus statutory additions accruing after that date. The United States is therefore entitled to pre-judgment interest, the late-payment penalty, and the FBAR penalty to the date of judgment and is also entitled to post-judgment penalty accruals and interest from the date of judgment onward under 28 U.S.C. § 1961. If needed, the United States can provide the Court with an updated computation of these accruals to the intended date of judgment on request.

**D.     Should the Court find that the IRS abused its discretion, remand is required.**

If the Court finds that the IRS's penalty calculation was in error and that such error is not harmless, remand is necessary. "If the record before the agency does not support the agency action, [or] if the agency has not considered all relevant factors, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## V.   CONCLUSION

The penalties assessed against Ms. Hughes are consistent with both the statutory regime and the IRS's internal guidelines. The IRS exercised informed discretion in setting penalty amounts commensurate with the harm caused by the FBAR violations. The 2012 and 2013 penalties should be affirmed and the Court should enter judgment thereon.

Respectfully submitted December 1, 2021.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Ty Halasz*
TY HALASZ (Colorado Bar)
Trial Attorney, Tax Division
United States Department of Justice

*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel for all parties that have appeared in this action.

/s/ Ty Halasz
TY HALASZ
Trial Attorney, Tax Division
United States Department of Justice